[Crim. No. 600.   Third Appellate District.—January 11, 1922.]

## In the Matter of the Application of TOM SCOTT for a Writ of Habeas Corpus.

[1] Insane Persons—Sufficient Affidavit.—An affidavit charging a person with insanity sufficiently meets the requirements of the statute where it recites that such person is insane and is so far disordered in mind as to endanger the health, person, or property of himself and others, followed by the statement that he at various times had threatened persons with violence.

[2] Id.—Affidavit—Rules of Pleading Inapplicable.—The statement of the charge in the affidavit by which the matter of a person's sanity may be inquired into by a judge of the superior court is not required to be with the technical precision or nicety required of a pleading.

[3] Id.—Adjudication of Insanity — Testimony of Physicians — Conclusiveness of Recital.—An adjudication reciting that two named physicians were required by the judge to attend the hearing for the purposes of the inquisition, that they testified thereat and made the required certificate, is conclusive as to the facts recited.

[4] Id.—Demand for Jury Trial—Fixing of Time—Construction of Code—Directory Provision.—The provision of section 2174 of the Political Code, fixing the time within which an alleged insane person must be tried by jury after his demand therefor, is merely directory, and he must, to preserve his right in such particular, make an objection to proceeding with the trial upon that ground at the time the trial is about to be commenced.

[5] Id.—Disagreement of Jury—Retrial—Discretion.—Under the provision of section 2174 of the Political Code, declaring that the alleged insane person must be discharged unless a verdict that he is insane is found by at least three-fourths of the jury, it is in the discretion of the court, where three-fourths of the jury are unable to agree on a verdict of insanity, to determine, upon a full consideration of the evidence, the question whether there should be a retrial before another jury.

[6] Id.—Date of Retrial—Discretion.—It is within the discretion of the court, after the question of insanity has once been tried by a jury and a disagreement of the jury has followed, to fix the date of the retrial within any reasonable time after the date of such disagreement.

PROCEEDING on Habeas Corpus to secure release from custody under charge of insanity.   Writ discharged.

The facts are stated in the opinion of the court.

John R. Connelly for Petitioner.

C. C. McDonald for Respondent.

HART, J.—One Tom Scott is held in custody by the sheriff of Yolo County under an adjudication by the judge of the superior court of said county that he is insane. For a variety of alleged reasons, he claims that the restraint of his person under the adjudication so made is illegal, and his attorney has petitioned this court for an order releasing him from custody through the agency of a writ of *habeas corpus.*

It appears that on the first day of September, 1921, one Neal Chalmers filed an affidavit with the clerk of said superior court charging said Scott with being dangerously insane. The affidavit, after first alleging that the said Scott is insane, and so far disordered in mind "as to endanger the health, person or the property of himself and others," proceeds:

"That he, at Woodland, in said county, *on the 30th day of September, 1921* (Italics ours), threatened to kill John Ansell because the said Ansell was cutting the hedge . of affiant; that he had threatened 'to get' affiant at divers times if affiant should employ anyone else to do his yard work; that he has also threatened others with violence without cause."

Upon the foregoing affidavit, an inquisition was, on the seventh day of September, 1921, conducted before the judge of the superior court, resulting in an adjudication that said Scott was insane, or, to employ in part the language of the adjudication itself, "so far disordered in mind as to endanger health, person and property, and that it is dangerous for life, health, person and property for such person to be at large, and that his condition is such as to require care and treatment in a hospital for the care and treatment of the insane." By the adjudication it was ordered that Scott be committed to and confined in the Napa State Hospital, at Napa, California.

It is further recited in the adjudication that Scott was represented by an attorney at the inquisition; that "at said hearing and examination, there were in attendance M. W. Ward and T. W. Prose, two regularly appointed and

qualified Medical Examiners of said Yolo County, who then and there heard the testimony of all the witnesses, and each of whom made a personal examination of said alleged insane person, and testified before the court as to the results of such examination, and other pertinent facts within their knowledge; that said Medical Examiners, after making examination and hearing testimony of the witnesses, and testifying as aforesaid, did make a certificate showing all the facts required by section 2170 of the Political Code, which certificate is hereto attached and made a part hereof.''

It is further shown that on the thirteenth day of September, 1921, the attorney for the said insane person (the same attorney who appears in this proceeding *in propria persona* in support of the petition for the writ herein sought), filed in the office of the county clerk and clerk of the superior court of said Yolo County a demand for a jury trial for the purpose of trying and thus testing the question of the sanity of said Scott. On the twentieth day of October, 1921, it was ordered by the judge of said court that the question of the sanity of said Scott be tried by a jury on the fifteenth day of November, and, the alleged insane person having been under an order of the said judge returned to the county of Yolo from the state hospital for that purpose, the trial of said question was had before a jury on said fifteenth day of November and the sixteenth day of November, 1921. After the question was submitted to the jury and the latter had deliberated upon the evidence adduced before them upon the issue involved, said jury returned into court and through the foreman thereof announced that they had failed to agree. The judge discharged the jury and thereafter, and on the twenty-eighth day of November, 1921, reset the matter for trial by a jury for the first day of December, 1921. On the last-named date, the matter was called for trial, whereupon, by the consent of all the parties, including the petitioner as attorney for said Scott, the matter was continued until the nineteenth day of December, 1921, to be set for trial. It is stated in the petition that the petitioner was present ''throughout all the proceedings above alleged'' acting therein as the attorney for said Scott.

The petitioner makes these points: 1. That the original proceeding culminating in the commitment of Scott by the

judge was void for these reasons: That the affidavit by which said proceeding was initiated and upon which the adjudication was based, although made and filed on the first day of September, 1921, alleges that the asserted acts of insanity committed by Scott occurred on the thirtieth day of September, 1921, or approximately a month after said affidavit was prepared and filed; that two physicians were not called to testify as to the alleged insanity of Scott before the judge, as required by the statute. But upon the assumption that the original proceeding and the commitment of Scott following therefrom were valid, the petitioner makes the following contentions: 2. That the alleged insane patient became entitled to his discharge for the reason that the question of his sanity was not brought to trial before a jury within ten days from the date of the demand for a jury trial, as provided by section 2174 of the Political Code; 3. That if the going to trial without objection was a waiver of the ten-day period within which the trial by jury should be had in such a case, the patient was entitled to a discharge because of the failure of three-fourths of the jury impaneled to try the question of his sanity to find that he was insane. 4. It is further contended that, conceding that the patient was not, under the statute, entitled to his discharge for failure of three-fourths of the jury to find that he was insane, he is, nevertheless, entitled to be discharged, for the reason that he was not given a trial by jury within ten days from the date of the disagreement of the jury to whom in the first instance was submitted for determination the question whether he was sane or insane.

[1] 1. The affidavit upon which the adjudication of the insanity of the patient was founded was legally sufficient to warrant the investigation of the question of his sanity and a determination and adjudication that he was insane, if there was evidence to sustain the statement contained in said affidavit that he was insane. It is more than probable that the averment in the affidavit that the patient threatened the life of John Ansell on the 30th of September, 1921, is a clerical misprision. This would seem to be true from the fact that the affidavit was made and filed on the first day of September, 1921. Probably the thirtieth day of August instead of the thirtieth day of September, 1921, was the date of said alleged threats, and that the affiant so in-

tended to state. But, in any event, that portion of the affidavit may be eliminated and still the affidavit was sufficient to warrant the inquisition. It further states, it will be noted, that said Scott "is insane and is so far disordered in mind as to endanger the health, person or property of himself or others." This statement, together with the further statement that he had at divers times threatened "to get" affiant and others, etc., is sufficient to meet the requirements of the statute, which provides, in part:

"Whenever it appears by affidavit to the satisfaction of a magistrate of a county, or city and county, that any person therein [named?] is so far disordered in mind as to endanger health, person or property, he must issue . . . a warrant, directing that such person be arrested and taken before a judge of the superior court of a county, for a hearing and examination on such charge." (Pol. Code, sec. 2168.)

The form for the affidavit, as prescribed by the above section, contains a blank space in which the specific acts of insanity charged against the patient may be set forth, as threats or attempts by the patient to commit acts of violence. But there are undoubtedly cases of mental disorder in which the insanity of the person is not manifested by acts of violence or threats to commit such acts. A person, as is well known, may be insane and yet harmless, so far as the person and the property of himself or others are concerned, the insanity being characterized by mere mental morbidity, and no threat or attempt to do any violent acts made. In such case clearly the general statement in the affidavit that the alleged insane person was disordered in mind or insane, together with as accurate a description of the manifestations of his mental disorder as may be given, would be sufficient. Besides, the proceeding, aside from that involved in the trial of the question of the patient's sanity, was intended to be summary in character, the real purpose thereof being to ascertain and determine whether he is suffering from mental disorder and should be confined in a hospital for the insane not only for the purpose of protecting the public from violence at his hands but also for the treatment of his malady by those having special experience in the treatment of mental diseases. [2] It is clear, therefore, that the statement of the charge in the affidavit by which the matter of his sanity may be inquired into by a judge of the superior

court is not required to be with the technical precision or nicety required of a pleading.

[3] 2. There is no support for the contention that the adjudication of the insanity of the patient and his commitment to the state hospital following therefrom are invalid for the alleged reason that two physicians did not testify before the judge upon the question of the patient's sanity. Section 2169 of the Political Code, among other things, provides:

"The superior judge may, for any hearing . . . compel the attendance of witnesses and must compel the attendance of at least two medical examiners, who must hear the testimony of all witnesses, make a personal examination of the alleged insane person, and testify before the judge as to the result of such examination, and to any other pertinent facts within their knowledge."

Section 2170 of said code provides that the medical examiners so summoned to appear and testify before the judge as to the sanity of the alleged patient must make a certificate in effect showing in detail the facts upon which the conclusion that such patient is insane was predicated.

The adjudication, as seen, recites that two physicians (naming them) were required by the judge to attend the hearing for the purposes of the inquisition, that they testified thereat and made the certificate last above referred to. The adjudication is conclusive as to the essential facts therein recited and that in the particular referred to the requirements of the statute were regularly complied with. There is, indeed, no showing here to the contrary, assuming that in this proceeding a showing *aliunde* the record itself of the proceedings at the hearing would be of avail as in impeachment of the validity of the adjudication or of the commitment.

[4] 3, 4. The two remaining contentions involve the construction of section 2174 of the Political Code. So much of said section as is necessary to be considered in this connection reads as follows: "If a person ordered to be committed, or any friend in his behalf, is dissatisfied with the order of the judge committing him, he may, within five days after the making of such order, demand that the question of his sanity be tried by a jury before the superior court of the county in which he was committed. Thereupon that

court must cause a jury to be summoned and to be in attendance at a date stated, not less than five nor more than ten days from the date of the demand for a jury trial. At such trial the cause against the alleged insane must be represented by the district attorney of the county, and the trial must be had as provided by law for the trial of civil causes before a jury, and the alleged insane person must be discharged unless a verdict that he is insane is found by at least three-fourths of the jury.''

As seen, the petitioner declares that, even conceding that the original commitment was in all respects regular or valid, he is entitled to his discharge because the court did not cause a jury to be summoned and to be present in court for the trial of the question of the patient's alleged insanity until a date (November 15, 1921), subsequent to the expiration of ten days from the date of the demand for a jury. In the first place, it is to be remarked that, so far as the express terms of the statute are concerned, the plain implication therefrom is that the only condition upon which an alleged insane person, after having been adjudged to be insane by the judge, is entitled to his discharge is the failure of three-fourths of the jury to whom the question of his insanity is submitted to reach a verdict that he is insane. In the second place, granting that he would in such case be entitled to his discharge, still, since the provision fixing the time within which an alleged insane person must be tried by jury after his demand therefor is, in our opinion, merely directory, he must, to preserve his right in that particular, make an objection to proceeding with the trial upon that ground, at the time that the trial is about to be commenced. It is not made to appear in the record before us that either the petitioner or the alleged insane person made any objection to the trial by jury on the ground that said trial was fixed at a date more than ten days subsequent to the demand for such a trial. It would certainly be very strange if the legislature had intended to say that, because, perhaps for very good and substantial reasons, such a trial was not had within the time prescribed by the statute after a demand therefor, no such trial could be had at all and no sound reason is apparent for holding that it did so intend. Hence, failure by the patient or his legal representative to object at the time such trial was about to be started

to proceeding therewith after the time within which the statute provided that it should be had carried with it a waiver of any objection on that score.

[5] But the most serious question presented here is whether Scott is entitled to his discharge by reason of the failure of the jury to find, by a concurrence of at least three-fourths of the members thereof, a verdict that he is or was insane.

The provision of section 2174 of the Political Code that "the alleged insane person must be discharged unless a verdict that he is insane is found by at least three-fourths of the jury" by whom the question of his sanity is tried is in the nature of an appeal from the judge's adjudication that the patient is insane, and if the petitioner's construction of that provision of said section is sound, then, upon one trial of the issue the judgment of four members of a jury composed of the usual number will operate not only to nullify the legal force of the previous adjudication that the patient is insane, but to overrule the judgment of a majority of the members of the jury and the opinion of the medical experts that the patient is insane. Of course, precisely the same result might come about if the question were tried by a jury more than once, but, since the effect of a failure of three-fourths of a jury to agree that a patient already adjudicated to be insane is insane, is rather far-reaching when it is considered that thus to a jury of laymen is submitted for solution an issue involving the investigation of pure questions of science with which, as a rule, experts only are competent to deal, we do not believe that the legislature intended that so important an issue should be definitively determined on one trial thereof only by the mere negative action upon the part of a jury of laymen. We think that, where, in such a case, three-fourths of the jury are unable to reach the conclusion that the patient is insane, it is in the discretion of the court before which the trial is had, upon a full consideration of the evidence which had been brought to the attention of the jury, to determine whether the question should be retried before another jury. In other words, we do not think that the legislature ever intended that, where there has been a mistrial before a jury of such an issue and the court is still of the opinion that the evidence is sufficient to justify the conclusion that the patient is

insane, the patient must, notwithstanding the opinion of the court, be discharged. Evidently what the legislature intended only to say, although not expressing it in very clear style, was that a concurrence of three-fourths of the members of a jury is required to find that the alleged insane person is insane—that is to say, that the legislative purpose of that provision was merely to fix the number of jurors of the panel necessary to determine and find that the alleged insane person is insane; and we, therefore, further conclude that, where there has been a mistrial—that is, where three-fourths of the members of a jury have not found a verdict that the patient is insane—it is entirely within the discretion of the trial court either to order a retrial of the issue before another jury or discharge the patient, according to what the trial court's opinion of the effect of the evidence adduced before the jury may be. If this be not a correct construction of the provision in question, then in such a case, although the evidence adduced before the judge at the previous hearing and before the jury at the trial might conclusively show that the alleged insane person was dangerously insane, a failure of three-fourths of the jury to find a verdict to that effect would result immediately in his liberation, with attendant detrimental consequences not only to the public but to the patient himself.

[6] There is nothing in the statute requiring the retrial of the question of the patient's sanity before a jury within ten days after a disagreement by a former jury trying the same question. Hence we think it is only a fair construction of the statute to hold that it is within the discretion of the court, after the question has once been tried by a jury and a disagreement of the jury has followed, to fix the date of the retrial within any reasonable time after the date of such disagreement. There is, therefore, nothing in the point so sought to be made.

For the reasons herein stated, the writ is discharged and the said Tom Scott remanded to the custody of the sheriff of Yolo County, pending a retrial of the question of his sanity before a jury.

Burnett, J., and Finch, P. J., concurred.